IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:08CR387 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| HARRY HOWARD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on February 18, 2010.

## I. FACTS

The defendant was charged in Count I of the indictment with knowingly receiving and distributing visual depictions and attempting to receive depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252A(a)(2); in Count II with knowingly possessing computer files containing an image of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B); and in Count III with forfeiture of the property used in Counts I and II in violation of 18 U. S. C. § 2253. Filing No. 1, Indictment. Under 18 U.S.C. § 2252A, it is a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2). Under that statute, the mandatory minimum sentence for the crime charged in Count I is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1). In contrast, the crime charged in Count II carries a maximum sentence of ten years for a first offender, with no minimum sentence. 18 U.S.C. § 2252 (b)(1).

Howard entered a plea of guilty to Count I and agreed to forfeit the property involved in Count III to the government.  Filing No. 25.  There is no plea agreement in this case; however, at the change-of-plea hearing, the government agreed to dismiss Count II at sentencing.  The court accepted Howard's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated Howard's sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 38, PSR (Sealed) at 5.  An order of forfeiture was entered on August 10, 2009.  Filing No. 33.

In the PSR, the Probation Office based its outline of the offense conduct on the prosecutor's version of events.  *Id.* at 4-5.  As part of an FBI investigation of peer-to-peer ("P2P") networks, law enforcement officers connected with a computer owned by Howard and downloaded image files with filenames known by law enforcement to constitute child pornography.  *Id.* at 4.  FBI agents obtained an administrative subpoena to determine the subscriber information and later searched Howard's home, seizing computers, hard drives, CDs and SD cards that contained child pornography.  *Id*. at 5.  A forensic examination of Howard's computers and hard drives revealed 17,489 separate child pornography images and 101 videos of child pornography.  A large number of the images and videos involved prepubescent children and children under the age of 12 and also depicted bondage, sodomy with animals, and adult penetration of prepubescent minors.  *Id.* at 6.

The Probation Office determined that U.S.S.G. § 2G2.2(a)(2) provides a base offense level of 22 for Howard's violation.  *Id.* at 8.  Howard was found accountable for a total of 25,064 images of child pornography.  *Id.* at 8.  The following upward adjustments

2

were applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other images of violence);[1] a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images). *Id.* at 7-8.  The application of these enhancements results in an adjusted offense level of 40.   After subtracting three levels for his acceptance of responsibility under U.S.S.G. § 3E1.1, Howard's total offense level under the Guidelines is 37.   *Id.* at 9. Howard has no criminal convictions and his resulting criminal history category is I.   *Id.* at 10.   At offense level 37 and criminal history category I, Howard's Guidelines range of imprisonment is 210 months (seventeen and one-half years) to 262 months (roughly twenty-two years).  The government adopted the findings in the PSR.  Filing No. 30.

At the sentencing hearing, Howard moved for a sentence outside the Guidelines range.  He argued for a deviation or variance from the Guidelines range under 18 U.S.C. § 3553(a) by reason of his mental status, lack of a criminal record and the low likelihood that he presents a danger to minors.

Howard is fifty-eight years old.  Filing No. 38, PSR at 11.  He is a Marine Corps veteran.  *Id.*  He has been married five times, but is presently single.  *Id.* at 12.   He suffers

---

[1]Under Eighth Circuit case law, the materials possessed by the defendant portray sadistic conduct. *United States v. Diaz*, 368 F.3d 991, 992 (8th Cir.2004); *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.").

from allergies, asthma, chronic obstructive pulmonary disease, high blood pressure, high cholesterol, migraines, and arthritis.  He takes numerous prescribed medications and he also uses an oxygen tank.  *Id.* at 12.  He does not leave his house much and has difficulty functioning because of his multiple health problems.  *Id.* at 13.  He uses a walker and cane to ambulate.  *Id.*

The court ordered a psychiatric evaluation.  Howard was examined by a psychiatrist and a psychologist.  The examining psychiatrist reported that Howard had been diagnosed as having organic brain syndrome secondary to an unknown toxic agent and was also treated for major depressive disorder and a history of PTSD.  The psychiatrist's diagnostic impression of Howard was Dysthymic Disorder of many years' duration.  Also, the psychiatrist noted possible mild Cognitive Disorder NOS based on Howard's presentation and concrete approach to interpreting information.  He could not diagnose pedophilia within a reasonable degree of medical certainty.  He also noted the interaction of Howard's numerous medications in connection with Howard's reported confusion during the time of his criminal conduct.

The psychologist also noted Howard's history of depression and reported that Howard had received psychiatric and medical care at the Lincoln Regional Center, the Hastings Regional Center and the VA Hospital in Omaha.  The psychologist administered several psychological tests and examined Howard's intellectual abilities as they related to his abilities to determine appropriate or inappropriate behaviors.  The psychological testing shows that Howard is at low risk of committing sexual violence.  Intelligence testing shows that Howard's verbal IQ classification is "high average," but his performance IQ score places him in the "low average" category, resulting in a statistically significant difference

4

between his verbal and performance abilities.  Personality testing suggests the presence of neurotic symptoms and some markers suggest suicidal ideation.  Test scores also showed unusual thoughts and perceptual processes that may manifest in unrealistic thinking.  Howard was diagnosed with Dysthymic Disorder - by history, Social Anxiety Disorder, Acute Stress Disorder, and Avoidant Personality Disorder.

## II.   LAW

The Sentencing Guidelines are no longer mandatory.  *United States v. Booker,* 543 *U.S. 220, 260-61 (2005).*  Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened.  *Gall v. United States,* 552 U.S. 38, 59 (2007) (finding a sentence outside the Guidelines to be reasonable); *see also Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *Rita v. United States,* 551 U.S. 338, 349-50 (2007); *Cunningham v. California,* 549 U.S. 270, 286-87 (2007).  District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'"  *Kimbrough,* 552 U.S. at 101 (quoting *Booker,* 543 U.S. at 245-246).  These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines."  *Kimbrough,* 552 U.S. at 113 (Scalia, J., concurring).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a).[2]  *Nelson v. United States,* 129 S. Ct. 890,

---

[2]Those factors are:
(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)   the need for the sentence imposed-
    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment or the offense;
    (B)   to afford adequate deterrence to criminal conduct;
    (C)   to protect the public from further crimes of the defendant; and
    (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)    the kinds of sentences available;

891-92 (2009). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." _Kimbrough,_ 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, they are not the only consideration. _Gall,_ 552 U.S. at 49. The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." _Id._ at 50; _Nelson,_ 129 S. Ct. at 892 ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be _presumed_ reasonable.") (emphasis in original). After giving both parties an opportunity to argue for an appropriate sentence, "the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." _Gall, 552 U.S. at 50; Nelson,_ 129 S. Ct. at 891-92 ("the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter").

The Supreme Court rejects the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." _Id._ at 49. The court is free to consider "whether the Guidelines sentence should not apply, perhaps

---

(4)   the advisory guideline range;
(5)   any pertinent policy statements issued by the Sentencing Commission;
(6)   the need to avoid unwarranted sentence disparities; and
(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita*, 551 U.S. at 351 (citations omitted).

The court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards." *Kimbrough,* 552 U.S. at 108-09; *Rita,* 551 U.S. at 349-50. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at 109 (quoting *United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at 96; *Gall,* 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 552 U.S. at 109.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita*, 551 U.S. at 350); *see also Gall,* 552 U.S. at 46 n.2. (noting that not all Guidelines are tied to empirical evidence).  Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence.  *See Kimbrough,* 552 U.S. at 109-110.  In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case."  *Kimbrough,* 552 U.S. at 110; *see also Spears v. United States*, 129 S. Ct. 840, 843 (2009) (per curiam) (clarifying that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines"); *United States v. O'Connor,* 567 F.3d 395, 398, n.4 (8th Cir. 2009) (assuming without deciding that *Kimbrough's* holding extends beyond the crack-cocaine Guidelines); *United States v. Huffstatler,* 571 F.3d 620, 624 (7th Cir. 2009) (noting that district courts may "have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines," but are not required to do so).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; United States Sentencing Commission, *The History of the Child Pornography Guidelines* 44-48 (October

2009), available at http://www.ussc.gov/ full.pdf ("Child Porn. History Rep't") (discussing Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), available at http://mow.fd.org/index.shtm (unpublished comment, last visited February 18, 2010). The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives.[3] Child Porn. History Rep't at 6 (stating "Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses" and "[the Commission] must bow to the specific directives of Congress"); *see, e.g.,* U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996); Vol. II, amend. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amend. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996), available at http://www.ussc.gov/reports.htm (last visited February 22, 2010) ("Sex Offenses Rep't").   At the inception of the Guidelines, simple possession

---

[3] Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children.  *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional in Ashcroft v. Free Speech Coal., 535 U.S. 234 (2002),* & 2252A; the Protection of Children from Sexual Predators Act of 1998, *codified as amended* at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008).

of child pornography was not a crime and the relevant Guideline provision, § 2G2.2, was limited to "transporting, receiving, or trafficking" offenses. *See* U.S.S.G. § 2G2.2 (1987). The crimes of possession and possession with intent to sell were added to the statute as part of the Crime Control Act of 1990. *See* Pub. L. 101-647, § 323(b), 104 Stat. 4789, 4818-19 (1990); *United States v. Vig,* 167 F.3d 443, 449 (8th Cir. 1999) (noting the expansion of Congress's enforcement authority as a result of the criminalization of the mere possession of child pornography). Correspondingly, Congress directed the Sentencing Commission to "amend existing Guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate." Pub. L. 101-647, 1990 S. 3266, Title III, § 323(a), (b), 104 Stat. 4789, 4819 (Nov. 29, 1990).

In 1991, over the objection of the Sentencing Commission, Congress, reacting to the erroneous perception that the Sentencing Commission had lowered the penalties for child pornography crimes, explicitly directed the Commission to alter the Guidelines to correspond to its perception of the Crime Control Act of 1990. *See Proceedings and Debates of the 102nd Congress, First Session,* 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, *H6737, *H6741 (Cong. Rec.) (1991). Originally, the Commission decided to treat receipt, as opposed to receipt with intent to traffic, as analogous to possession rather than trafficking because receipt is a logical predicate to possession.[4] Child Porn. History Rep't at 19; U.S.S.G. App. C, Vol. I, Amend. 372. Congress rejected

---

[4]The Commission proposed the creation of a separate guideline provision, § 2G2.4, with a base offense level of 10, to cover possessing, receiving, or transporting child pornography. See Notice of Proposed Amendments to the Sentencing Guidelines, 56 Fed. Reg. 1846-01, 1863, 1991 WL 310646 (proposed Jan. 17, 1991). Under the Sentencing Commission's proposal, trafficking would have continued to be covered in § 2G2.2, with a base offense level of 13. *Id.* at 1863-64.

the Sentencing Commission's advice and in doing so, abandoned the studied "empirical" approach to sentencing with respect to child pornography crimes.  *See Proceedings and Debates,* 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, at H6738 (Correspondence to Congressman Edward R. Roybal from Sentencing Commission Chairman William Wilkins); Child Porn. History Rep't at 19-22.  Congress explicitly directed the Sentencing Commission to, among other things, increase the base offense level for child pornography crimes; to include "receiving" pornography in the Guidelines section that governed trafficking and transporting; to increase the base offense level for receiving, transporting, and trafficking from 13 to 15; to add enhancements for the number of items possessed; and to add an enhancement for patterns of activity involving the sexual abuse or exploitation of a minor.  137 Cong. Rec. H6736-02*, H6741,* 1991 WL 187764, at H6741; Child Porn. History Rep't at 23-24.

In 1995, Congress again directed the Commission to increase penalties for child pornography and other sex crimes against children.  *See* U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995)); Child Porn. History Rep't at 26.  The Sentencing Commission carried out that directive by increasing the base offense levels for producing, trafficking, and possessing child pornography by two levels and adding a two-level enhancement for use of a computer.  *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2, 2G2.4); Child Porn. History Rep't at 27.  The Commission also clarified and broadened the definition of

the "pattern of activity" enhancement to apply to conduct unrelated to the offense of conviction in order to "increase the sentences for the most dangerous offenders."  Sex Offenses Rep't, Executive Summary at i; *see* U.S.S.G. App C, Vol. I, amend. 537.

Congress also directed the Sentencing Commission to prepare a report and analysis of sex offenses against children and child pornography for submission to Congress.  Sex Crimes Against Children Prevention Act of 1995*,* Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774, 775 (1995) (enacted).  In its report to Congress, the Sentencing Commission noted that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children" and recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes.  Sex Offenses Rep't, Executive Summary at ii; Child Porn. History Rep't at 37 (noting that the enhancements were aimed at child pornography offenders with a history of abusing children).  The amendments and recommendations were intended to "ensure lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children."  Sex Offenses Rep't, Executive Summary at i.  The Sentencing Commission acknowledged, however, that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court.[5]  *Id*.  The Commission stated that "[p]enalties for sex offenses against children have been increased

---

[5]In fact, the Commission's report was based on a study of only twenty-two Internet child pornography cases sentenced under U.S.S.G. § 2G2.2, the trafficking/receipt Guideline.  Sex Offense Rep't at 29.

in recent years and are quite severe," but noted that amendment may "be appropriate to increase sentences for the most dangerous offenders." *Id.*

Congress responded to the Commission's report with legislation that increased the penalties for child pornography, exploitation and abuse. Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 1998 H.R. 3494, 105th Cong., 112 Stat. 2974 (1998) (enacted). It directed the Commission to increase penalties and add enhancements, and to clarify that distribution included distribution for nonpecuniary gain. *Id.,* 112 Stat. at 2980-82. The Sentencing Commission afforded expansive coverage to the meaning of distribution in U.S.S.G. § 2G2.2(b)(3)(A)-(F) and added several enhancements depending on the purpose and audience for the distribution. U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000); Child Porn. Rep't at 35-36.

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (the "PROTECT Act"), which established a five-year mandatory minimum sentence for trafficking/receipt offenses, increased the statutory maximum for possession offenses from five to ten years, and increased the statutory maximum from 15 to 20 years for trafficking/receipt offenses. 18 U.S.C. §§ 2252(a)(1)-(3) and 18 U.S.C. § 2252A(a)(1) - (4) and (6) *and see* PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amend. 649 (April 30, 2003). In the PROTECT Act, Congress made direct amendments to the Guidelines by increasing the offense level for possession and distribution of images of sadistic or masochistic conduct and adding enhancements for the number and type of child pornographic images. *See* PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 673 (2003); Child Porn. History Rep't at 39. Congress also issued

further directives to the Sentencing Commission.  *See* U.S.S.G. App. C, Supp. Vol., amend. 649 (Apr. 30, 2003), 664 (Nov. 1, 2004); Child Porn. History Rep't. at 41.  To conform to the new mandatory minimum sentences and higher statutory maxima, the Sentencing Commission raised base offense levels for trafficking/receipt offenses from 18 to 22 and base offense levels for possession from 15 to 18.  U.S.S.G. App. C, Supp. Vol., amend. 664 (Nov. 1, 2004)*;  Child Porn History Rep't at 49.*  The Commission noted that enhancements for use of a computer and number of images would be applicable in every case, thus ensuring that the Guideline sentences would approximate the statutory mandatory minimum sentences.  U.S.S.G. App. C, Supp. Vol., amend. 664 (Nov. 1, 2004)*; see also* Child Porn. History Rep't at 46-47.  In the fall of 2008, Congress again passed legislation relating to child pornography offenders.  PROTECT Our Children Act of 2008, Pub. L. No. 110–401, § 304, 122 Stat. 4229, *4243 (2008); Child Porn. History Rep't at 50.  The PROTECT Our Children Act created a new offense at 18 U.S.C. § 2252A(a)(7) with a statutory maximum of 15 years, making it unlawful to produce or distribute "morphed images" of an identifiable minor.  *Id.*

The text and structure of the criminal child pornography statutes prohibit conduct across a spectrum of activity ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography to "knowingly selling or possessing with intent to sell" child pornography.  18 U.S.C. § 2252A(a)(1)-(4).  The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.  *See* Child Pornography

Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251; Child Porn. History Rep't at 30-31.   In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity."   U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); Child Porn. History Rep't at 30-31.   In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism."   Child Porn. History Rep't at 37.   The primary victims of the crime of possession of pornography are the exploited children*.   See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice.  Fifteen-Year Assessment at 23-24.  The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge."  United States Sentencing Commission, *Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 14-15 (August 1991) *("*Mand. Min. Rep't"), available at http://www.ussc.gov/reports.htm (last visited Feb. 18, 2009).  The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the

prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system.  Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").  The Commission reports that its efforts to ensure proportionality between the child pornography trafficking, receipt, and possession offenses with other crimes such as first degree murder, second degree murder, assault with intent to murder, conspiracy to commit murder, rape, production of pornography, voluntary manslaughter, kidnapping, and travel to engage in a sex act, have resulted in median sentences in fiscal year 2008 "of 78 months for offenders sentenced at §2G2.2 [for possessing and trafficking in material involving sexual exploitation of a minor]; 108 months for offenders who traveled to engage in a prohibited sexual conduct with a minor sentenced at §2G1.3(a); 139 months for criminal sexual abuse offenders sentenced at §2A3.1(a); and 240 months for production of child pornography offenders sentenced at §2G2.1."  Child Porn. History Rep't at 47 n. 219, 48 n.224.  The Commission also notes that "[s]entencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates."  Child Porn. History Rep't at 54.

Sentencing courts must consider "the history and characteristics of the defendant" as one of the § 3553(a) factors.  *See Rita, 551 U.S. at 365* (Stevens, J., concurring).  Although "[m]atters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered

under the Guidelines," they are "matters that § 3553(a) authorizes the sentencing judge to consider." *Id.* (citations omitted).

### III.  ANALYSIS

#### A.  Guideline Calculation

The court adopts the findings in the PSR.  Howard's base offense level under the Guidelines is 22.  See U.S.S.G. § 2G2.2(a)(1).  The court finds the following adjustments are applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and a five-level increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images. The court finds a downward adjustment for acceptance of responsibility is warranted. Howard's resulting offense level is 37.   At criminal history category I, Howard's recommended sentencing range under the Guidelines is 210 to 262 months.[6]

#### B.  Section 3553 Factors

Howard's motion for a deviation or variance from the Guidelines is granted.   The court finds a sentence outside the Guidelines is warranted in this case.  The court finds that Howard should be sentenced to a period of incarceration of 60 months followed by a

---

[6]The statutory maximum caps the Guidelines range in this case at 240 months (twenty years).

term of supervised release of ten years.  This sentence fulfills the objectives of sentencing set out in Section 3553(a).

With respect to the nature and circumstances of the offense, the court finds that possession and distribution of child pornography are serious offenses.  Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography.   Criminalizing  the  possession  of  child  pornography  is  a  necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children.  Howard's conduct, however, falls at the low end of the continuum of criminal conduct—from possession to distribution to production to predatory abuse—that exploits children.  A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme.

Also, there are varying levels of participation and blameworthiness with respect to distribution.  It is clear that the statutes criminalizing possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters.  Although file-sharing arrangements help facilitate Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit.  This case does not involve the widespread distribution of child pornography for profit.  Howard did not possess child pornography in order to entice a child nor is there any indication that he ever had improper contact with an actual child, photographed minors engaged in sexual conduct, or ever engaged in pedophilia.  He is a low-level consumer and somewhat

18

inadvertent distributor of child pornography whose sentence should fall closer to the low end of the statutory range than to the maximum.

The court has also considered Howard's history and characteristics. Howard has numerous physical and mental health problems. There is no allegation that he ever abused or attempted to abuse a child or acted inappropriately toward a child. He has no criminal record. It is clear to the court that Howard has serious psychiatric issues. He has a history of alcohol abuse and there are indications that he may have some cognitive deficits. He also has a history of major depression and PTSD. Based on the court's review of the record, it appears that Howard's mental status and mental illness contributed to his actions. The numerous medications he takes for his physical complaints also may have played a role. Howard's mental condition must be considered in determining his culpability for his actions. His mental condition lessens his culpability for his actions to some extent. Importantly, psychological testing shows that he is at low risk of sexual violence. There is no indication that he is any danger to children.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point. However, in view of the fact that the child pornography Guidelines are driven by Congressional directive, rather than grounded in any scientific, statistical, or empirical method, the advice imparted in the Guidelines is outside the Sentencing Commission's area of expertise and need not be accorded a high degree of deference by the court. The Sentencing Commission diverged significantly from its studied, empirical approach in formulating these Guidelines and produced a sentence greater than necessary to provide just punishment. Although downloading child pornography is hardly a harmless activity, it is not equivalent to the direct physical abuse or sexual molestation of children,

19

or to the production of pornography involving children.  The court finds that the Guidelines ranges may be appropriate for a sexual predator, but they are not a reliable appraisal of a fair sentence in this case.

The Guidelines sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.[7]  In the context of this and most Internet child pornography crimes that involve peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor. Because of the nature of peer-to-peer file sharing programs, most simple possessory crimes evolve into distribution offenses once someone accesses a shared file.  The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum sentence in Section 2252A, and need not be augmented by Guidelines enhancements that further increase a defendant's sentence.  In this case, a fairly typical offender with no criminal history has a recommended Guidelines imprisonment range that places him at or near the statutory maximum sentence for his crime.

Under the Guidelines scheme, there is essentially no internet child pornography offender who could end up with a recommended sentence at the low end of the statutory

---

[7]In this case, the application of enhancements inordinately increases Howard's Guidelines range of imprisonment.  The Guideline enhancements raise his offense level from 22 to 40.  Offense levels of 40 or above are generally reserved for only the most serious of offenses and the most dangerous of offenders.  The defendant does not belong in that category.

range.[8]  Howard is subject to enhancements for use of a computer and for the number and type of images that apply in virtually every case.  The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court.  The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders.  Because of the unfortunate ease with which large numbers of images can be accessed and stored, most child pornography offenders are subject to enhancements from two to five levels for the number of images.[9]  In this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this market-based and quantity-driven scheme.  In contrast to drug quantity in a drug-trafficking prosecution, the number of images a defendant possesses is meaningless as an indicator of his position in a distribution hierarchy.  Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of up to five levels overstates that connection.

---

[8]At criminal history category I, a five year sentence is found at level 25.  With a base offense level of 22 and the two-level enhancement for use of a computer that is applied in every Internet pornography case, only a defendant with fewer than ten images, no images of prepubescent minors or of sadistic or masochistic acts and who only received pornography and did not distribute at all would receive a sentence at the low end of the statutory range.  In the court's experience, most child pornography defendants have adjusted offense levels close to 40.

[9]A five-level enhancement is provided for possession of more than 600 images.  In the court's experience, most offenders fall in that category.

As noted, Howard was originally charged with a violation of 18 U.S.C. § 2252(a)(4)(B), possession of child pornography, as well as 2252A(a)(2), receipt and distribution of child pornography.  In the context of many Internet child pornography crimes, there is no real distinction between the crimes charged under 18 U.S.C. § 2252A(a)(2) (receipt and distribution) and those charged under 2252(a)(4)(B) (possession), since both statutes criminalize "receipt" of child pornography.  One must receive child pornography in order to possess it via the Internet.  Because "receipt" is equated with distribution in the sentencing scheme, the prosecutor is left with unfettered discretion in charging and plea bargaining decisions.

The court finds the seventeen-and-a-half to twenty-year sentence recommended under the Guidelines (based on the imposition of numerous and excessive enhancements for circumstances that appear in nearly every child pornography case such as use of the Internet, amassing numerous images, possessing images of prepubescent minors and violence, and some "distributing" of images in return for other images) is greater than necessary to protect the public and to deter Howard from re-offending.  The mandatory minimum sentence of five years is appropriate to achieve the goals of sentencing in this case.  Five years is a significant term of imprisonment for a first offender.  The public will be adequately protected by a ten-year term of supervised release with strict conditions and by the provision of mental health treatment and sex offender treatment to Howard.  The mere fact of Howard's prosecution and conviction will deter others from engaging in this sort of conduct.  The deterrent value of any longer sentence would be marginal.  With respect to general deterrence, although conduct like Howard's may sustain the market for

child pornography, much of that market is driven by compulsive behavior that arguably will not be deterred in any event. The deterrent effect of a lengthy sentence is further lessened by the international character of the market for child exploitation offenses. To the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court has also considered the need to avoid sentencing disparities. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. This case does not involve such conduct and there is no indication that Howard is likely to engage in such conduct in the future. Legislative history also shows concern with dangerous child abusers and repeat offenders. The enhancements of increasing severity for quantity and for recidivism are designed to apply to the most dangerous of child pornography offenders. Howard is not the most dangerous of child pornography offenders. There is no evidence that he has abused, or is likely to abuse, children. The evidence establishes that Howard is not likely to commit further crimes. Howard's lack of a criminal history and low risk of reoffending suggests that a sentence of five years is likely to afford adequate punishment and deterrence.

The court further finds that an outside-the-Guidelines sentence will respect the distinction between Howard's culpability and the far greater culpability of an actual predator

or abuser.  The sentence of a purveyor or small-time distributor of child pornography should be proportional to and significantly lower than a sentence for an exploitative crime that involves acts of abuse by a defendant.  Moreover, the court finds that a sentence of five years is more proportional to other crimes than the recommended Guidelines sentence of over seventeen years.  It is close to the median sentence for a person sentenced for receipt and distribution child pornography crimes and is relatively proportional to the median sentences for defendants who engaged in more serious child sexual exploitation crimes such as production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 1st day of March, 2010.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.